UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| DANIEL JOSE GOMEZ,<br><br>Plaintiff,<br><br>vs.<br><br>OFFICER REITER, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; OFFICER BOBIER, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; COLEEN MORAN, IN HER INDIVIDUAL AND OFFICIAL CAPACITY, UNKNOWN NURSE, IN HER OFFICIAL CAPACITY,<br><br>Defendants. | 4:21-CV-04179-RAL<br><br><br>1915A SCREENING DISMISSING IN PART, DIRECTING SERVICE IN PART, AND DENYING MISCELLANEOUS MOTIONS |

Plaintiff Daniel Jose Gomez filed a pro se lawsuit under 42 U.S.C. § 1983. Doc. 1. This Court granted Gomez leave to proceed in forma pauperis and ordered him to pay an initial filing fee. Doc. 8. Gomez timely paid his initial filing fee on November 15, 2021. Gomez has also filed a motion for miscellaneous requests, a motion for subpoena, a motion to appoint counsel, and a motion to join this case with two other cases. Docs. 12, 13, 14, 15. This Court now screens Gomez's complaint under 28 U.S.C. § 1915A.

I.      **1915A Screening**

    A.      **Factual Allegations of Gomez's Complaint**

Gomez is an inmate at the Minnehaha County Jail. Doc. 1 at 1. Gomez alleges that on October 1, 2021, he was sitting outside his home when police arrived and arrested him for violating a no contact order that his wife, Bianca, had against him. Doc. 1 at 7; Doc. 5 at 4; Doc. 9 at 2. Bianca was occupying the home at the time, and Gomez claims that he was attempting to

retrieve some belongings, including work tools, keys, his phone, and his wallet. See Doc. 9 at 6. Gomez argues that he needed his cell phone in order to access court documents and caselaw related to other cases in which he is a party. Doc. 1 at 5. Gomez also claims that he was there to peaceably assemble on his own property so that he could peacefully protest on police body cameras and "get his objections, appeals, and grievances of an unlawful unreasonable seizure of his property and an abuse of power trespassing him from his property" on camera. Doc. 5 at 3.

Gomez claims that Officers Reiter and Bobier of the Sioux Falls Police Department arrived and used excessive force in arresting him for violating the no contact order. Doc. 1 at 4-5. Specifically, he claims he was seated and not resisting when the officers arrived, at which point they pushed and pulled him repeatedly, fired a taser directly into his face, and struck him in the top of the head with the taser itself. Id. at 4; Doc. 5 at 4. He claims that the officers made a false report that Gomez had violated the no contact order so that they could assault and arrest him. Doc. 1 at 5. He also claims that they submitted a false police report alleging that he attacked them so as to justify the use of force. Doc. 5 at 4.

Gomez alleges that he was then brought to the Avera McKennan Hospital emergency room, where unknown officers of the Sioux Falls Police Department directed medical staff to inflict cruel and unusual punishment upon him. Doc. 1 at 6. He alleges that nurses did not provide him with numbing medication, disinfectant, or topical dressings. Id. He also alleges that he was tightly cuffed at the hospital, cutting off blood flow to his limbs, and that the blood pressure monitor placed on him tightened several times and cut off his circulation. Doc. 11 at 4. He claims that an Unknown Nurse directed questions about care to the officers, rather than to him, and when he objected, the Unknown Nurse told him that he didn't have a choice because he

was under arrest. Id. He also claims that the Unknown Nurse did not use anesthetics or disinfectant when removing what he refers to as shrapnel following the use of a taser. Id.

Gomez alleges that Coleen Moran of the Minnehaha County State's Attorney's Office gathered false testimony from Officers Reiter and Bobier in order to indict him. Doc. 12 at 2-3. He also alleges that Kaleb Paulson, his court-appointed counsel, withheld video evidence from the grand jury that would have exonerated him. Doc. 9 at 8; Doc. 12 at 3. He claims that the charges he faces have been "pumped up" in retaliation to his exercising his right to access the courts. Doc. 1-1 at 46.

Gomez brings several claims stemming from these incidents. He claims that Officers Reiter and Bobier used excessive force when they arrested him. Doc. 1 at 4-5. He also claims that unknown officers, along with the Unknown Nurse, inflicted cruel and unusual punishment upon him at Avera McKennan Hospital. Id. at 6. He alleges that Officers Reiter and Bobier restricted his access to the courts when they arrested him. Id. at 5. He claims that Officers Reiter and Bobier conspired to deprive him of his rights and that they violated 18 U.S.C. §§ 241 and 242, criminal statutes pertaining to the deprivation of rights, when they did so. Id. at 4-5. Gomez has been convicted of other crimes, and he claims that the use of those prior convictions to enhance present-day sentences under South Dakota's habitual offender statute violates his right to be free from double jeopardy. Doc. 1-1 at 42. He accuses Moran of retaliating against him for accessing the courts. See id. at 46. He also accuses her of prosecutorial misconduct, including selective prosecution, grand jury abuses, vindictive prosecution, presentation of false testimony, and malicious prosecution. Doc. 12 at 2-3.

Gomez seeks several forms of relief. Doc. 1 at 7-9. He asks this Court to allow self-defense against police officers' use of "illegal unreasonable excessive deadly force." Id. at 7. He

seeks to have all defendants held accountable under 18 U.S.C. §§ 241 and 242. Id. at 8. He asks for a standing order expanding the scope of representation of court-appointed attorneys so that appointed counsel can file civil complaints for their clients. Id. He also asks this Court to legalize recreational marijuana and to dismiss the appeal of Amendment A, a South Dakota constitutional amendment pertaining to the legalization of marijuana, that was pending at the time he filed this complaint. Id. Gomez asks this Court to order Avera to create a room where arrested individuals can be securely held without the presence of law enforcement officers. Id. at 9. Gomez seeks $250,000 from the Sioux Falls Police Department and $25,000 from Avera McKennan Hospital. Id. at 7. He also asks for his medical bills to paid for by the Sioux Falls Police Department.

### B.   Legal Standard

A court when screening under § 1915A must assume as true all facts well pleaded in the complaint. Estate of Rosenberg v. Crandell, 56 F.3d 35, 36 (8th Cir. 1995). Pro se and civil rights complaints must be liberally construed. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Bediako v. Stein Mart, Inc., 354 F.3d 835, 839 (8th Cir. 2004). Even with this construction, "a pro se complaint must contain specific facts supporting its conclusions." Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985); see also Ellis v. City of Minneapolis, 518 F. App'x 502, 504 (8th Cir. 2013). Civil rights complaints cannot be merely conclusory. Davis v. Hall, 992 F.2d 151, 152 (8th Cir. 1993); Parker v. Porter, 221 F. App'x 481, 482 (8th Cir. 2007) (per curiam).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation omitted). If a complaint does not contain these bare essentials, dismissal is appropriate. Beavers v. Lockhart, 755 F.2d 657, 663-64 (8th Cir. 1985). Twombly requires that a complaint's "[f]actual allegations

must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true[.]" Twombly, 550 U.S. at 555 (internal citation omitted); see also Abdullah v. Minnesota, 261 F. App'x 926, 927 (8th Cir. 2008) (noting that a complaint must contain either direct or inferential allegations regarding all material elements necessary to sustain recovery under some viable legal theory). Under 28 U.S.C. § 1915A, the court must screen prisoner complaints and dismiss them if they "(1) [are] frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

### C.  Gomez's Causes of Action

#### 1.  Claims against Unknown Nurse

Gomez brings claims against an Unknown Nurse at Avera McKennan Hospital. Doc. 1 at 2. A claim under § 1983 requires that the defendant act "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia[.]" 42 U.S.C. § 1983. The Unknown Nurse is not a state official, as Avera McKennan Hospital is a private hospital. But if a private party "is a willful participant in joint action with the State or its agents[,]" that party has acted under color of state law for § 1983 purposes. Dennis v. Sparks, 449 U.S. 24, 27 (1980). If a private party is such a participant, the plaintiff can bring a claim against both the private party defendant and the state official for civil conspiracy in violation of § 1983. See Adickes v. S. H. Kress & Co., 398 U.S. 144, 152 (1970) ("[A] private party involved in such a conspiracy, even though not an official of the State, can be liable under § 1983. 'Private persons, jointly engaged with state officials in the prohibited action, are acting "under color" of law for purposes of the statute.' " (quoting United States v. Price, 383 U.S. 787, 794 (1966))). The Eighth Circuit Court of Appeals has held that "a plaintiff seeking to hold a private party

liable under § 1983 must allege, at the very least, that there was a mutual understanding, or a meeting of the minds, between the private party and the state actor." Mershon v. Beasley, 994 F.2d 449, 451 (8th Cir. 1993). The plaintiff must allege "specific facts tending to show" a meeting of the minds. Murray v. Lene, 595 F.3d 868, 870 (8th Cir. 2010).

Here, Gomez fails to allege sufficient facts to show a mutual understanding or a meeting of the minds between the Unknown Nurse and the unknown officers. He claims that medical staff at Avera McKennan Hospital, including the Unknown Nurse, followed orders from the officers. Doc. 1 at 6. He also claims that an officer told the medical staff to "just yank [the shrapnel] out[.]" Doc. 11 at 4. He alleges that the Unknown Nurse later told him, "You don't have a choice your [sic] under arrest!" Id. Although Gomez alleges that the Unknown Nurse followed the officers' orders, he does not allege that she and the officers came to a mutual understanding or agreement to violate his rights. At most, he alleges that she deferred to their authority, which is not enough to show an agreement. Thus, the Unknown Nurse was not acting under color of state law, and Gomez's claims against the Unknown Nurse are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

2.  **Excessive Force in Initial Encounter**

Gomez brings claims against Officers Reiter and Bobier in their individual and official capacities for excessive force in violation of the Fourth Amendment. See Doc. 1 at 2, 4-5. The Fourth Amendment guarantees the right to be free from excessive force during an arrest. Jackson v. Stair, 944 F.3d 704, 709 (8th Cir. 2019) (citing Graham v. Connor, 490 U.S. 386, 394-95 (1989)). The Supreme Court of the United States "has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Graham, 490 U.S. at 396. "[T]he Fourth Amendment

6

requires us to ask, from the perspective of a reasonable officer on the scene, 'whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.' " Franklin v. Peterson, 878 F.3d 631, 635 (8th Cir. 2017) (quoting Graham, 490 U.S. at 397).

Here, Gomez alleges that the force used by Officers Reiter and Bobier was not objectively reasonable. Doc. 1 at 4. He claims that he was not resisting and that he was on his own property. Doc. 1-2 at 11. Gomez acknowledges that he did use force against Reiter and Bobier, but claims that he was not the aggressor and that he was defending himself against police brutality. Doc. 5 at 4. Gomez has alleged sufficient facts to support Fourth Amendment excessive force claims against Officers Reiter and Bobier. Thus, his excessive force claims for the initial encounter against Officers Reiter and Bobier in their individual and official capacities survive § 1915A screening.

### 3. Excessive Force at Avera McKennan Hospital

Gomez brings claims for cruel and unusual punishment following the incident at Avera McKennan Hospital. Doc. 1 at 6. Construing his complaint liberally, these claims are Fourth Amendment excessive force claims because Gomez had not yet been lawfully committed to pretrial detention by a judicial determination of probable cause.[1] See Bell v. Wolfish, 441 U.S. 520, 535-37 (1979). Gomez alleges that "unknown officers" directed medical staff at the hospital

---

[1] Although Eighth Amendment protections from cruel and unusual punishment protect inmates from excessive force, the Eighth Amendment is not implicated until after "a formal adjudication of guilt in accordance with due process of law." Ingraham v. Wright, 430 U.S. 651, 671 n.40 (1977). Before a formal adjudication of guilt but following a lawful commitment to pretrial detention, a detainee's right to be free from excessive force is protected by the Due Process clause of the Fourteenth Amendment. Id.; see Bell v. Wolfish, 441 U.S. 520, 535-37 (1979). Because Gomez had not yet been lawfully committed to pretrial detention when he was taken to Avera McKennan Hospital, his right to be free from excessive force falls under the protections of the Fourth Amendment.

7

to cause him harm. Doc. 1 at 6. He does not allege that Officers Reiter and Bobier, the only Sioux Falls Police Department defendants in this case, were among those unknown officers. See id. Gomez fails to bring this claim against the law enforcement defendants that he alleges harmed him, and his claims against the Unknown Nurse have been dismissed. Thus, Gomez's excessive force claims stemming from the incident at Avera McKennan Hospital are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 4. Access to the Courts

Gomez brings claims for deprivation of his First Amendment right of access to the courts against Officers Reiter and Bobier in their individual and official capacities. See Doc. 1 at 2, 5. "The Constitution guarantees prisoners a right to access the courts." White v. Kautzky, 494 F.3d 677, 679 (8th Cir. 2007). To succeed on a claim for denial of access to the courts, a plaintiff must show that he suffered actual injury as a result of the defendants' actions. Lewis v. Casey, 518 U.S. 343, 349 (1996). In order to satisfy the actual injury requirement, a plaintiff must "demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded." Johnson v. Missouri, 142 F.3d 1087, 1089 (8th Cir. 1998) (quoting Lewis, 518 U.S. at 353).

Gomez fails to show an actual injury as required by Lewis. He claims that his inability to recover his cell phone restricted his access to the courts regarding a different civil case he has filed. Doc. 1 at 5. He also claims that the Minnehaha County Jail is failing to provide envelopes and paper for filing legal documents. Doc. 13 at 4. But Gomez does not identify a nonfrivolous legal claim that has been frustrated or impeded. Indeed, Gomez has been a very active litigant in cases in this Court recently. Although he identifies a specific case in his complaint, he does not identify any filings that were frustrated or impeded. See Doc. 1 at 5. Further, a review of the docket for that case shows that it is still pending, and as such, Gomez cannot show an actual

8

injury because he can still submit any necessary filings in that case. See Gomez v. State of South Dakota, 4:20-CV-04151-RAL. As to his claim that the Minnehaha County Jail will not provide him with envelopes and paper, none of the defendants are associated with the Minnehaha County Jail. Thus, Gomez's access to the courts claims are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 5. Conspiracy

Gomez brings claims against Officers Reiter and Bobier in their individual and official capacities for conspiring to violate his rights. Doc. 1 at 4-5. Gomez cites 18 U.S.C. §§ 241 and 242, criminal statutes regarding the deprivation of rights. This Court has ruled that there is no private right of action under these criminal statutes. Mousseaux v. U.S. Comm'r of Indian Affs., 806 F. Supp. 1433, 1437 (D.S.D. 1992); see also United States v. Wadena, 152 F.3d 831, 846 (8th Cir. 1998) ("Only the United States as prosecutor can bring a complaint under 18 U.S.C. §§ 241-242 . . . These statutes do not give rise to a civil action for damages." (omission in original) (quoting Cok v. Cosentino, 876 F.2d 1, 2 (1st Cir. 1989))). Thus, Gomez fails to state a claim under 18 U.S.C. §§ 241 and 242.

Construing Gomez's complaint liberally, he also brings a civil claim for conspiracy to deprive him of his rights under § 1983. See Doc. 1 at 4-5. To plead a civil conspiracy under § 1983, Gomez must show "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action to be taken; (4) the commission of one or more unlawful overt acts; and (5) damages as the proximate result of the conspiracy." Livers v. Schenck, 700 F.3d 340, 360-61 (8th Cir. 2012) (quoting In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig., 113 F.3d 1484, 1498 (8th Cir. 1997)). "The plaintiff is additionally required to prove a deprivation of a constitutional right or privilege in order to prevail on a

9

§ 1983 civil conspiracy claim." White v. McKinley, 519 F.3d 806, 814 (8th Cir. 2008) (citing Askew v. Millerd, 191 F.3d 953, 957 (8th Cir. 1999)). As above, a plaintiff must allege "specific facts tending to show" a meeting of the minds. Murray, 595 F.3d at 870. Here, Gomez has not asserted facts to show a meeting of the minds between Officers Reiter and Bobier. Although he has alleged that they have deprived him of his rights, he has not alleged specific facts tending to show an agreement between the two of them to do so. Thus, Gomez's conspiracy claims against Reiter and Bobier in their individual and official capacities are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 6. Double Jeopardy

Gomez argues that South Dakota habitual offender statutes violate his right to be free from double jeopardy under the Fifth Amendment. See Doc. 1-1 at 39-40. He alleges that allowing the state to inflict a harsher punishment for a present conviction based on his past convictions punishes him twice for those past convictions. See id. The Supreme Court has repeatedly upheld challenges to habitual offender statutes on double jeopardy grounds. E.g., Vartelas v. Holder, 566 U.S. 257, 271-72 (2012). "Enhanced punishment imposed for the later offense is not to be viewed as . . . [an] additional penalty for the earlier crimes, but instead, as a stiffened penalty for the latest crime, which is considered to be an aggravated offense because [it is] a repetitive one." Id. (alterations in original) (internal quotations omitted). Thus, Gomez's claims for violation of his right to be free from double jeopardy are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 7. Retaliation

Gomez alleges that he is facing "pumped up" charges in retaliation for his exercising his right to access the courts. Doc. 1-1 at 46. He claims that he is being retaliated against for filing a

civil suit. Id. To allege a claim of retaliation in violation of the First Amendment, Gomez must "show (1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." Spencer v. Jackson Cnty., 738 F.3d 907, 911 (8th Cir. 2013) (quoting Revels v. Vincenz, 382 F.3d 870, 876 (8th Cir. 2004)). Filing a civil suit is a protected activity, and criminal prosecution could be seen as adverse action that would chill a person of ordinary firmness from continuing in the activity. But Gomez fails to allege facts to support that his prosecution is motivated by his exercise of the protected activity. See Doc. 1-1 at 46. Instead, he argues that evidence exists that invalidates his charges and that he is facing double jeopardy. Id. The existence of potentially exculpatory evidence is not enough to show that his prosecution is motivated by his filing a civil suit, and the double jeopardy argument does not speak to prosecutorial motivation. Thus, Gomez's claims for retaliation in violation of his First Amendment rights are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 8. Prosecutorial Misconduct

Gomez alleges that Coleen Moran has engaged in prosecutorial misconduct, including selective prosecution, grand jury abuses, vindictive prosecution, presentation of false testimony, and malicious prosecution. Doc. 12 at 2-3. Taken as a whole, Gomez's claims are for forms of malicious prosecution. "The general rule is that an action for malicious prosecution does not state a claim of constitutional injury." Tech. Ordnance, Inc. v. United States, 244 F.3d 641, 650 (8th Cir. 2001). "In other words, a § 1983 claim for malicious prosecution may survive only if defendants' actions also infringe on some provision of the constitution or federal law." Schmidt v. Louise Big Boy, 2007 WL 858419 at *10 (D.S.D. Mar. 20, 2007) (citing Tech. Ordnance, 244

11

F.3d at 650). Gomez merely makes conclusory allegations that he was indicted because of false testimony from Officers Reiter and Bobier. See Doc. 12 at 2-3. Thus, Gomez does not allege a constitutional injury based on malicious prosecution. Gomez's malicious prosecution claims are dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### III.   Motions for Discovery

Gomez has filed a motion for miscellaneous requests, Doc. 12, and a motion for subpoena, Doc. 13. Both motions seek discovery from various parties, including the Minnehaha County Jail and Kaleb Paulson. See Doc. 12 at 1; Doc. 13 at 1. Under Federal Rule of Civil Procedure 26(d)(1), a party may not seek discovery prior to a Rule 26(f) conference "except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order." Fed. R. Civ. P. 26(d)(1). One such exception is "an action brought without an attorney by a person in the custody of the United States, a state, or a state subdivision[.]" Fed. R. Civ. P. 26(a)(1)(B)(iv).

Discovery customarily is improper before a complaint is initially served. See Fed. R. Civ. P. 5(d)(1)(A) ("Any paper *after the complaint* that is required to be served—must be filed no later than a reasonable time after service." (emphasis added)); cf. Webb v. Johnson, 2021 WL 2002712, at *10 n.7 (D. Neb. May 19, 2021) ("[In a pro se civil case,] the court will issue a progression order, addressing discovery and other issues, approximately thirty days after the last defendant has answered." (quotation omitted)); Mays v. Sherburne Cnty. Jail, 2020 U.S. Dist. LEXIS 82530, at *5-6 (D. Minn. May 11, 2020) ("[Defendants] would not be required to respond to any discovery request [plaintiff] served on them until after service of the Summons and Complaint has occurred."). Thus, Gomez's request for discovery is premature, and his motion is denied.

### IV.  Motion to Appoint Counsel

Gomez has filed a motion to appoint counsel. Doc. 14. "A pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case." Stevens v. Redwing, 146 F.3d 538, 546 (8th Cir. 1998). In determining whether to appoint counsel to a pro se litigant, this Court considers the complexity of the case, the ability of the litigant to investigate the facts, the existence of conflicting testimony, and the litigant's ability to present his claims. Id. At this time, Gomez's claims do not appear to be complex, and he is able to investigate the facts and present his claims adequately. This Court believes that Gomez is capable of pursuing his claims pro se at this phase of litigation, and his motion for appointment of counsel is denied at this time.

### V.  Motion to Join Cases

Gomez has filed a motion to join this case two other cases. Doc. 15. The first case Gomez seeks to join is Gomez v. Mattson, 4:21-CV-04177-RAL, a federal habeas corpus case. See id. at 1. This Court dismissed that case and entered judgment in favor of the respondents and against Gomez on November 30, 2021. 4:21-CV-04177-RAL Docs. 7 and 8. The second case is a state habeas corpus case in the Second Judicial Circuit of the State of South Dakota. Doc. 15 at 1-4. This Court cannot entangle a federal case with a state case by joining the two. See Younger v. Harris, 401 U.S. 37, 43 (1971) ("Since the beginning of this country's history Congress has, subject to few exceptions, manifested a desire to permit state courts to try state cases free from interference by federal courts.") Thus, Gomez's motion to join cases is denied.

### VI.  Order

Accordingly, it is

ORDERED that Gomez's excessive force claims for the initial encounter against defendants Reiter and Bobier in their individual and official capacities survive 28 U.S.C. § 1915A screening. It is further

ORDERED that Gomez's remaining claims against all defendants are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). It is further

ORDERED that the Clerk shall send blank summons forms and Marshal Service Forms (Form USM-285) to Gomez so that he may cause the complaint to be served upon defendants Reiter and Bobier. It is further

ORDERED that Gomez shall complete and send the Clerk of Courts a separate summons and USM-285 form for defendants Reiter and Bobier. Upon receipt of the completed summons and USM-285 forms, the Clerk of Court will issue the summons. If the completed summons and USM-285 form are not submitted as directed, the complaint may be dismissed. It is further

ORDERED that the United States Marshal Service shall serve the completed summonses, together with a copy of the complaint, Doc. 1, and this order, upon defendants Reiter and Bobier. It is further

ORDERED that defendants Reiter and Bobier will serve and file an answer or responsive pleading to the complaint on or before 21 days following the date of service or 60 days if the defendant falls under Fed. R. Civ. P. 12(a)(2) or (3). It is further

ORDERED that Gomez will keep the court informed of his current address at all times. All parties are bound by the Federal Rules of Civil Procedure and by the court's Local Rules while this case is pending. It is further

ORDERED that Gomez's motion for miscellaneous requests, Doc. 12, is denied. It is further

ORDERED that Gomez's motion for subpoena, Doc. 13, is denied. It is further

ORDERED that Gomez's motion to appoint counsel, Doc. 14, is denied. It is finally

ORDERED that Gomez's motion to join cases, Doc. 15, is denied.

DATED December 15th, 2021.

                                        BY THE COURT:

                                        ROBERTO A. LANGE
                                        CHIEF JUDGE