UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

|  |  |
|---|---|
| DANIEL JOSE GOMEZ,<br><br>Plaintiff,<br><br>vs.<br><br>OFFICER JUSTIN REITER, IN HIS<br>INDIVIDUAL AND OFFICIAL CAPACITY;<br>AND OFFICIER ARRON BOBIER, IN HIS<br>INDIVIDUAL AND OFFICIAL CAPACITY,<br><br>Defendants. | 4:21-CV-04179-RAL<br><br><br><br>OPINION AND ORDER GRANTING<br>DEFENDANTS' MOTION FOR SUMMARY<br>JUDGMENT |

Plaintiff Daniel Jose Gomez, who is pro se, sued several Defendants under 42 U.S.C.

§ 1983 alleging violations of his constitutional rights. Doc. 1. This Court granted Gomez's motion

for leave to proceed in forma pauperis and ordered him to pay an initial filing fee. Doc. 8. After

Gomez timely paid his initial filing fee, this Court screened Gomez's complaint under 28 U.S.C.

§ 1915A, dismissing it in part and directing service upon the remaining defendants, Officers Reiter

and Bobier, in their individual and official capacities. Doc. 19 at 14. Gomez alleges that Officers

Reiter and Bobier used excessive force, in violation of the Fourth Amendment, when they arrested

him for violating a protection order on October 1, 2021. See Doc. 1 at 2, 4–5; Doc. 27 at 4–5.

Defendants contend that they are entitled to qualified immunity. Doc. 29 ¶ 13. Defendants move

for summary judgment. Doc. 49. Gomez filed a motion in opposition to Defendants' motion for

summary judgment, Doc. 62, and several other motions, including a motion for reciprocal order of

protection, Doc. 80, motion to appoint counsel, Doc. 81, motion to uphold and enforce the United

States Constitution, Doc. 95, motion to electronically file documents, Doc. 96, motion for a court

order/subpoena, Doc. 101, and motion to disqualify, Doc. 105.

## FACTUAL BACKGROUND

In accordance with D.S.D. Civ. LR 56.1.A, Defendants filed a statement of material facts

presenting each material fact "in a separate numbered statement with an appropriate citation to the

record in the case." See Doc. 51.  As the party opposing summary judgment, Gomez "must

respond to each numbered paragraph in the moving party's statement of material facts with a

separately numbered response and appropriate citations to the records." D.S.D. Civ. LR 56.1.B.

"All material facts set forth in the movant's statement of material facts will be deemed to be

admitted unless controverted by the opposing party's response to the moving party's statement of

material facts." D.S.D. Civ. LR 56.1.D; see also Fed. R. Civ. P. 56(e)(2) (providing that the court

can consider a fact undisputed when a party "fails to properly address another party's assertion of

fact as required by Rule 56(c)").  This rule applies even when the nonmoving party is proceeding

pro se.  Johnson v. Kaemingk, 4:17-CV-04043-LLP, 2020 WL 1441713, at *1 (D.S.D. Mar. 23,

2020) (deeming facts admitted where a pro se plaintiff filed an opposition to a motion for summary

judgment but did not comply D.S.D. Civ. LR 56.1.B); Joe v. Walgreens Co/ILL, 4:09-CV-04144-

RAL, 2010 WL 2595270, at *1 (D.S.D. June 23, 2010) (deeming facts admitted where a pro se

nonmoving party did not submit a statement of material facts or directly respond to the moving

party's statement of material facts): see also Bunch v. Univ. of Ark. Bd. of Trs., 863 F.3d 1062,

1067 (8th Cir. 2017) (holding that a litigant's pro se status does not excuse him from following the

district court's local rules).

In response to Defendants' Motion for Summary Judgment, Gomez filed a Statement of

Undisputed Material Facts, Doc. 58, and a Statement of Disputed Material Facts, Doc. 59.  Neither

of these pleadings include any citations to the record as required by D.S.D. Civ. LR 56.1.B. See Barge v. Anheuser-Busch, Inc., 87 F.3d 256, 260 (8th Cir. 1996) (stating that a district court is not required to "plumb the record in order to find a genuine issue of material fact."). Gomez filed a second Statement of Disputed Material Facts, Doc. 73, which Defendants request that this Court disregard because it is untimely, Doc. 77 at 2. This Court agrees that Gomez's second Statement of Disputed Material Facts is untimely, but this Court is disinclined to disregard Gomez's second Statement of Disputed Material Facts entirely but notes that it contained no citations to the record, as required by D.S.D. Civ. LR 56.1.B. Instead, Gomez's second Statement of Disputed Material Facts, Doc. 73, is largely unsupported and self-serving allegations. Because Gomez did not comply with D.S.D. Civ. LR 56.1.B, Defendants' Statement of Material Facts, Doc. 51, is deemed admitted.

Gomez filed a document he has labeled as an "affidavit." Doc. 61. However, the "affidavit" is not notarized. Because Gomez's "affidavit" was not made under oath or penalty of perjury, this Court will not consider the contents when evaluating whether there are genuine issues of material fact. See Banks v. Deere, 829 F.3d 661, 668 (8th Cir. 2016) ("Although Rule 56, as amended in 2010, no longer requires a formal affidavit, an unsworn declaration or statement substituted for a sworn affidavit must still meet important statutory requirements . . . [and] [u]nder 28 U.S.C. § 1746, an unsworn declaration or statement, must be written, signed, dated, and certified as true and correct 'under penalty of perjury.' "). On the other hand, because Gomez's complaint, Doc. 1, and amended complaint, Doc. 27, are verified, this Court will consider the contents of those pleadings when ruling on Defendants' motion for summary judgment. See Roberson v. Hayti Police Dep't, 241 F.3d 992, 995 (8th Cir. 2001) ("[T]he facts alleged in a verified complaint need not be repeated in a responsive affidavit in order to survive a summary

3

judgment motion."). However, as discussed in detail below, none of the statements in Gomez's complaint and amended complaint are sufficient to create a genuine issue of material fact.

On September 23, 2021, Gomez was arrested for abuse of or cruelty to a minor, aggravated assault on his wife, Blanca Flores, and interference with emergency communication. Doc. 51 ¶ 3.[1] Gomez was released on bond, and one of the conditions included that he not have contact with either Flores or the property located at 1929 E. 33rd Street North, Sioux Falls, South Dakota. Id. On October 1, 2021, Defendants Aaron Bobier[2] and Justin Reiter, officers with the Sioux Falls Police Department, responded to a domestic incident at 1919 East 33rd Street North in Sioux Falls. Doc. 52 ¶¶ 2–3; Doc. 53 ¶¶ 2–3. Rachel Mitchell, a recruit officer with the Sioux Falls Police Department, was assigned to patrol with Officer Bobier on October 1, 2021. Doc. 52-1 at 1. The officers were dispatched about 4:00 a.m. in response to a report by Blanca Flores that her husband, Gomez, was on the front porch of 1919 East 33rd Street North in violation of a court order. Doc. 52 ¶ 3; Doc. 53 ¶ 3; Doc. 54 ¶ 3. Officer Reiter was alone in his patrol call when he responded. Doc. 53 ¶ 6. While Officer Reiter was in route, he became aware that Officer Bobier and Recruit Officer Mitchell had also been dispatched. Id. ¶ 8. Before the officers arrived at the residence, Metro Communications advised the officers that there was a no-contact order against Gomez. Doc. 52 ¶ 7; Doc. 53 ¶ 7; Doc. 54 ¶ 7. Metro Communications transmitted the following information to the screens in the officers' patrol vehicles:

> Case number: 49CRI21-006928 Case Status: Pending File Date: 09/24/2021.
> Charge: 22-18-1.1(1) (F3) DOM ABUSE AGGRAVATED ASSAULT – BODILY

---

[1] In accordance with Federal Rule of Evidence 201, this Court takes judicial notice of the court filings in State v. Gomez, 49 Cri. 21-006928 (2nd Jud. Cir. 2021). See Knudson v. City of Fargo, 600 F.3d 992, 1000 (8th Cir. 2010) (recognizing that federal district courts may take judicial notice of state court files when they are relevant to issues in federal court).

[2] In the amended complaint, Gomez misspelled Officer Bobier's first name. Doc. 27 at 1, 2 (identifying one of the defendants as Arron Bobier). According to his affidavit, Doc. 52, the correct spelling is "Aaron".

> INJURY WITH INDIFFERENCE TO HUMAN LIFE (Domestic Violence)
> 09/24/2021 $10,000.00 CASH OR SURETY GOOD BEHAVIOR; STAY IN
> CONTACT WITH YOUR ATTORNEY; MAKE ALL COURT APPEARANCES;
> NO CONTACT WITH VICTIM BLANCA ASTORGA FLORES AND 1929 E
> 33RD STREET

Doc. 52-1 at 1. Metro Communications also advised the officers that Flores had reported that

Gomez might flee when they arrived and that Gomez had a history of resisting arrest. Doc. 52 ¶

7; Doc. 54 ¶ 7.

Both patrol cars arrived at the residence around the same time. Doc. 52 ¶ 8; Doc. 53 ¶ 8;

Doc. 54 ¶ 8. Officers Reiter, Bobier, and Mitchell wore body cameras, which captured audio and

video of their encounter with Gomez and corroborates much of Defendants' Statement of

Undisputed Material Facts. Doc. 52 ¶ 5 & Ex. B; Doc. 53 ¶ 5 & Ex. B; Doc. 54 ¶ 5 & Ex. B.

When the officers arrived at the residence, Gomez was sitting in a chair on the front porch. Doc.

52 ¶ 9; Doc. 53 ¶ 9; Doc. 54 ¶ 9. Flores had recently installed a security camera at the residence.

Doc. 55 ¶ 5. Video from Flores's security camera establishes that Gomez had been at the residence

for approximately three hours before Flores noticed he was there and notified the police. Doc. 55-

1 at 1. The officers approached the front porch but initially did not go up the stairs leading onto

the porch. Doc. 52 ¶ 9 & Ex. B; Doc. 53 ¶ 9 & Ex. B; Doc. 54 ¶ 9 & Ex. B. Officer Reiter asked

Gomez if he had a court order permitting him to be at residence and informed Gomez that a no-

contact order barred him from having contact with Flores or the residence. Doc. 52 ¶ 9; Doc. 53

¶ 9; Doc. 54 ¶ 9. According to the timestamp on his body camera, Officer Reiter began speaking

to Gomez at 4:15:30. Doc. 53 ¶ 9. Gomez responded that he was at the residence to retrieve his

personal items, had not made contact with Flores, and owned the property. Doc. 52 ¶ 10; Doc. 53

¶ 10; Doc. 54 ¶ 10. Gomez also stated that he had spoken to the police department and his lawyer.

Doc. 52 ¶ 10; Doc. 53 ¶ 10; Doc. 54 ¶ 10. Because Gomez did not have a court order permitting

him to be at the residence, Officer Reiter repeatedly advised Gomez that he was under arrest for violating the no contact order and instructed Gomez to stand up, turn around, and put his hands behind his back. Doc. 52-1 at 1; Doc. 53-1; Doc. 54-1.

Gomez did not comply with Officer Reiter's commands and remained seated. Doc. 52 ¶ 10; Doc. 53 ¶ 10; Doc. 54 ¶ 10. Gomez responded that he was not under arrest and that the officers were not going "to trespass" him from his own property. Doc. 52-1 at 1; Doc. 54-1. Because Gomez refused to comply with Officer's Reiter's instructions, Officer Reiter went up the stairs onto the porch and Officer Bobier followed. Doc. 52-1 at 1; Doc. 53-1 at 1; Doc. 54 ¶ 11. While Gomez remained seated, Officer Reiter again advised him he was under arrest and  grabbed his left arm, and Officer Bobier grabbed his right arm. Doc. 52 ¶ 12; Doc. 53-1 at 1; Doc. 54 ¶ 12. According to the timestamp on their body cameras, Officers Reiter and Bobier first made physical contact with Gomez at 4:17:08. Doc. 52 ¶ 12; Doc. 53 ¶ 12. When the officers made physical contact with Gomez, Gomez immediately tensed and pulled away from the officers. Doc. 52 ¶ 13; Doc. 53 ¶ 13. He tried to stand up and used his shoulders and body to strike Officer Reiter. Doc. 52 ¶ 13; Doc. 53 ¶ 13. Officer Reiter notified Metro Communications that Gomez was fighting with them, and Recruit Officer Mitchell called for backup. Doc. 52 ¶ 13; Doc. 53 ¶ 13; Doc. 54-1.

Because Gomez resisted the officers' efforts to handcuff him, Officer Reiter delivered a distracting blow to the left side of Gomez's face with his fist, which is a use of force on which Officer Reiter had been trained. Doc. 53 ¶ 14. Officer Reiter did not hit Gomez with full force because he intended only to distract Gomez so that the officers could gain control to handcuff him. Id. Gomez began throwing punches at the officers. Doc. 52 ¶ 14; Doc. 53 ¶ 15; Doc. 54 ¶ 13. Gomez then stood up, and Officer Bobier warned Gomez that he would be tased if he continued

to resist arrest. Doc. 52 ¶ 14. Officer Reiter attempted to tase Gomez on his left side but missed. Doc. 52 ¶ 15; Doc. 53 ¶ 15. Gomez struck Officer Reiter on the chin. Doc. 52 ¶ 15; Doc. 53 ¶ 15. Officer Reiter called out in pain and held his jaw. Doc. 52 ¶ 15. This blow momentarily stunned Officer Reiter. Doc. 53 ¶ 16. After striking Officer Reiter, Gomez continued to punch Officer Bobier repeatedly. Doc. 52 ¶ 15; Doc. 53 ¶ 16. Officer Bobier's vision blurred and turned to all white due to Gomez's punches. Doc. 52 ¶ 16. Gomez was attempting to put Officer Bobier in a bear-hug type hold and to push him over the porch railing. Id. After Officer Reiter regained his bearings, he deployed his taser a second time as Gomez continued to fight Officer Bobier. Doc. 53 ¶ 17. When he deployed his taser a second time, Officer Reiter intended to tase Gomez in his left arm or shoulder area. Id. Gomez's struggle with Officer Bobier caused the aim of Officer Reiter's taser to alter as he was firing it. Doc. 53-1 at 2. One of the taser probes struck Gomez on his left ear. Doc. 53 at ¶ 17. Gomez continued to fight after being tased in his left ear. Doc. 53 ¶ 17. Officer Bobier deployed his taser into Gomez's right leg. Doc. 52 ¶ 17; Doc. 53 ¶ 18. After contact, Gomez stated that he gave up and stopped resisting arrest. Doc. 52 ¶ 17; Doc. 53 ¶ 18; Doc. 54 ¶ 15.

According to the timestamp on Officer Bobier's and Officer Reiter's body cameras, Officer Bobier deployed his taser at 4:18:22. Doc. 52 ¶ 17; Doc. 53 ¶ 18. Gomez stated that he gave up and stopped fighting and resisting arrest at 4:18:23. Doc. 52 ¶ 17; Doc. 53 ¶ 18. Officers Bobier and Reiter placed Gomez in handcuffs and seated him on the steps of the front porch. Doc. 52 ¶ 18; Doc. 53 ¶ 19; Doc. 54 ¶ 16. During the struggle, Officer Reiter deployed his taser twice, and Officer Bobier deployed his taser once. Doc. 54 ¶ 15. Approximately seventy-five seconds elapsed between the officers' first physical contact with Gomez and Gomez stating that he gave up. Doc. 51 ¶ 19.

Gomez appeared to suffer a cut to his head, and an ambulance came to assess and treat him. Doc. 52-1 at 2. Other officers who responded to the call for backup transported Gomez to Avera McKennan Hospital. Doc. 51 ¶ 20. On the morning of October 1, 2021, Gomez was medically cleared and transported to the Minnehaha County Jail. Doc. 56 ¶ 5. Gomez was charged with two counts of aggravated assault on a law enforcement officer (extreme indifference), two counts of aggravated assault on a law enforcement officer (serious bodily injury), and two counts of violation of a no-contact order. Doc. 51 ¶ 21. Officers Reiter and Bobier also received medical care after the incident. Officer Reiter, whom Gomez had punched on the chin, suffered a complete facture of his left lower jaw that required surgery as well as facial nerve damage. Doc. 53 ¶ 20. Officer Reiter received a three-percent whole-person impairment rating due to the injuries Gomez caused. Id. Officer Bobier suffered a closed-head injury and a soft-tissue injury to his right hand. Doc. 52 ¶ 20.

## DISCUSSON

### I.    Gomez's Motion for Extension of Time

Defendants' Motion for Summary Judgment was filed on August 31, 2022. Doc. 49. In accordance with D.S.D. Civ. LR 7.1.B, Gomez's responsive pleadings were due on September 21, 2022. Gomez timely filed a statement of undisputed material facts, Doc. 58, a statement of disputed material facts, Doc. 59, an affidavit, Doc. 61, a motion in opposition to defendants' motion for summary judgment, Doc. 62, which appears to be a brief rather than a motion, and supplemental legal authorities, Doc. 63. In accordance with D.S.D. Civ. LR 7.1.B, Defendants submitted their Reply Brief in Support of Motion for Summary Judgment on September 21, 2022. Doc. 64.

Approximately three weeks later, on October 13, 2022, Gomez filed a motion seeking an extension of time to respond to Defendants' Motion for Summary Judgment. Doc. 70. After filing his motion for extension, Gomez filed a brief in opposition to defendants' motion for summary judgment, Doc. 72, a statement of disputed material facts, Doc. 73, and a motion to supplement his opposition to defendants' summary judgment to include a law review article and an article from American Law Reports, Doc. 75. Gomez has also filed a motion for good cause delay to file documents. Doc. 84.

Defendants oppose Gomez's motion for extension of time and request that the Court disregard Gomez's untimely filings. Doc. 77. A court has discretion, for good cause, to extend the time period within which an action must be taken. Fed. R. Civ. P. 6(b). Because the time period for Gomez to respond to Defendants' motion for summary judgment had already expired when Gomez filed his motion for extension of time, this Court may only extend Gomez's time for responding to Defendants' motion if his failure to act was caused by "excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). In his motion for extension, Gomez makes no effort to show good cause or excusable neglect. Further, that he submitted timely responses, see Docs. 58, 59, 61, 62, 63, indicates that there was no good cause or excusable neglect that would permit him to submit additional untimely responses. Gomez's motion for extension of time, Doc. 70, motion to supplement opposition to defendants' motion, Doc. 75, and motion for good cause delay to file documents, Doc. 84, are denied.[3]

---

[3] Even if this Court were to consider Documents 72, 73, and 84, it would not affect the outcome of Defendants' Motion for Summary Judgment. As previously discussed, Gomez's untimely statement of disputed materials fact, Doc. 73, contains no citations to any record evidence. Similarly, along with his motion for good cause delay to file documents, Gomez requests that this Court consider highlighted and marked up copies of Officer Reiter's and Officer Bobier's reports designating the contents of which Gomez disputes. See Doc. 84-1. Gomez cannot overcome Defendants' motion for summary judgment simply by identifying facts he disputes.

## II.      Defendants' Motion for Summary Judgment

### A.  Summary Judgment Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  On summary judgment, the evidence is "viewed in the light most favorable to the nonmoving party." True v. Nebraska, 612 F.3d 676, 679 (8th Cir. 2010) (citation omitted).  There is a genuine issue of material fact if "a reasonable jury [could] return a verdict for either party" on a particular issue.   Mayer v. Countrywide Home Loans, 647 F.3d 789, 791 (8th Cir. 2011).  A party opposing a properly made and supported motion for summary judgment must cite to particular materials in the record supporting the assertion that a fact is genuinely disputed. Fed. R. Civ. P. 56(c)(1); Gacek v. Owens & Minor Distrib., Inc., 666 F.3d 1142, 1145 (8th Cir. 2012).  "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." Thomas v. Corwin, 483 F.3d 516, 527 (8th Cir. 2007).

### B.  Individual Capacity Claims

Gomez brings this action against Officers Bobier and Reiter under 42 U.S.C. § 1983 seeking monetary damages and injunctive relief. See Docs. 1, 27.  Section 1983 provides a cause of action against any "person" who, acting "under color of" state law, deprives the plaintiff of "rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983.  State officials

---

Gomez must support his assertion by citing to specific record evidence.  None of Gomez's untimely submissions cite to any specific record evidence.  This Court has considered the legal authorities referenced in Gomez's timely submissions and has independently researched all relevant case law and other authorities beyond what was cited by the parties.

sued in their individual capacities for monetary damages under § 1983 may be entitled to qualified immunity as a defense. Qualified immunity "shields a government official from liability in a § 1983 action unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." Partlow v. Stadler, 774 F.3d 497, 501 (8th Cir. 2014) (citation omitted). To determine whether a government official is entitled to qualified immunity, the court considers (1) whether the facts alleged, viewed in the light most favorable to plaintiff, demonstrate the official's conduct violated a constitutional right, and (2) whether the constitutional right was clearly established at the time of the alleged misconduct. Saucier v. Katz, 533 U.S. 194, 201 (2001). The court may consider the elements in any order, and if either of the elements is not met, then the official is entitled to qualified immunity. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

Gomez brings claims against Officers Reiter and Bobier in their individual and official capacities for excessive force in violation of the Fourth Amendment. See Doc. 27 at 2, 4–5. The Fourth Amendment guarantees the right to be free from excessive force during an arrest. Jackson v. Stair, 944 F.3d 704, 709 (8th Cir. 2019) (citing Graham v. Connor, 490 U.S. 386, 394–95 (1989)). The United States Supreme Court "has long recognized that the right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Graham, 490 U.S. at 396. "To establish a constitutional violation under the Fourth Amendment's right to be free from excessive force, the test is whether the amount of force used was objectively reasonable under the circumstances." Brown v. City of Golden Valley, 574 F.3d 491, 496 (8th Cir. 2009) (quoting Henderson v. Munn, 439 F.3d 497, 502 (8th Cir. 2006)). The reasonableness of an officer's use of force is evaluated "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396.

11

"This calculus allows 'for the fact that police officers are often forced to make split-second decisions—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.' " Brown, 574 F.3d at 496 (quoting Graham, 490 U.S. at 397). The reasonableness inquiry is an objective inquiry. Id. Circumstances relevant to the reasonableness of an officer's conduct include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. (quoting Graham. 490 U.S. at 396). Based on the undisputed facts, Officer Reiter's and Officer Bobier's use of force was objectively reasonable in light of the facts and circumstances confronting them.

Before the officers climbed the stairs of the porch where Gomez sat, Officer Reiter had informed Gomez multiple times that he was under arrest and instructed him stand to up and put both of his hands behind his back. Gomez refused and verbally responded that he was not under arrest and that the officers were trespassing.[4] Officers Reiter and Bobier reasonably interpreted Gomez's actions as resisting arrest. Eighth Circuit precedent establishes that an officer may use force to effectuate an arrest when the suspect appears to be resisting arrest. Kohorst v. Smith, 968 F.3d 871, 876 (8th Cir. 2020) (citing Ehlers v City of Rapid City, 846 F.3d 1002, 1011 (8th Cir.

---

[4] "Any person who, knowing that he or she is not privileged to do so, enters or remains in any place where notice against trespass is given" is guilty of criminal trespass. SDCL § 22-35-6. The officers were privileged to enter the property to investigate the report that Gomez was violating a no-contact order. State v. Cook, 319 N.W.2d 809, 812 (S.D. 1982) ("[A]n officer of the law who goes upon private property while investigating a crime is not a trespasser.") (citations omitted). Further, Gomez asserts that because he owned the property, he was not in violation of the no-contact order. Doc. 59 at 4. However, under South Dakota law, one cannot resist arrest because he believes the arrest is unlawful. See SDCL § 22-11-5 (providing that it is "no defense to a prosecution . . . [for resisting arrest] that the law enforcement officer was attempting to make an arrest which in fact was unlawful[.]").

2017)).  Accordingly, Officers Reiter and Bobier did not use objectively unreasonable force when they entered the porch and grabbed Gomez's arms in an attempt to handcuff him.

When Gomez responded by pulling away and pushing the officers with his body, it was not objectively unreasonable for Officer Reiter to administer a distracting blow.  The Eighth Circuit has consistently upheld the use of force to arrest a suspect who resists arrests by ignoring officers' commands.  In Ehlers v. City of Rapid City, for example, the Eighth Circuit held that an officer could use a take down to effect an arrest when the suspect ignored an officer's two commands to place his hands behind his back and walked away from the officer.  846 F.3d at 1011. Because a reasonable officer would interpret the suspect's refusal to comply with the directive to put his hands behind his back as noncompliance, the Eighth Circuit held that "Officer Dirkes did not violate a constitutional right by executing the take down."  Id.  Significantly, the Eighth Circuit held that Officer Dirkes was entitled to use force to effect an arrest for a nonviolent misdemeanor because it would appear to a reasonable officer that the suspect was resisting.[5]  Id.; see also Kelsay v. Ernst, 933 F.3d 975, 982 (8th Cir. 2019) (en banc) (finding that the district court erred in denying

_____

[5] In his submissions, Gomez notes that violation of a no-contact order is a misdemeanor. Doc. 62 at 3.  However, as the Eighth Circuit and Supreme Court have instructed, when considering an excessive force claim, courts must consider the totality of the circumstances. Graham, 490 U.S. at 396; Kelsay v. Ernst, 933 F.3d 975, 981 (8th Cir. 2019) (en banc).  In this case, the officers were aware that the no-contact ordered stemmed from a felony charge of domestic violence aggravated assault six days earlier, that the domestic assault victim had summoned the police from inside the residence, and that Gomez had a history of resisting arrest and was likely to flee.  See Wommack v. Brown, No.4:11CV1487SNIJ, 2012 WL 5948922, at *12 (E.D. Mo. Nov. 28, 2012) (stating that officers who arrested a suspect for violating an ex parte protection order were aware that the suspect had previously engaged in threatening behavior and acted reasonably by tasing the suspect when he resisted arrested and assaulted the officers).  Although Gomez denies that he, in fact, has a history of resisting arrest, see Doc. 58 at 6, the relevant question is what information the officers had been provided, not whether that information was accurate.  Ryan v. Armstrong, 850 F.3d 419, 427 (8th Cir. 2017) (stating that objective reasonableness is assessed from "the perspective of a reasonable officer at the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight.").

13

qualified immunity when officer executed a takedown because a nonviolent suspect ignored officer's command to stop walking and "get back here"). In this case, when Gomez refused to comply with Officer Reiter's repeated directives to stand up and place both his hands behind his back, the officers were entitled to use the force necessary to effect the arrest. Initially, the officers attempted to gain control of Gomez by grabbing his arms, which, as a matter of law, is not excessive force given the circumstances the officers faced. After Gomez resisted by pulling away and using his body to shove the officers, Officer Reiter used a distracting blow, which is less forceful than the spin takedown that the Eighth Circuit addressed in Ehlers. As a matter of law, because of Gomez's resistance and then violent response when the officers grabbed his arms, the use of a distracting blow was not excessive.

This Court also finds that, as a matter of law, Officers Reiter and Bobier did not use excessive force by deploying their tasers. When the officers deployed their tasers, Gomez was actively, aggressively, and violently resisting arrest. He had punched the officers repeatedly and placed Officer Bobier in a bear hug in an attempt to push him over the porch railing. Officer Bobier warned Gomez that he would be tased if he continued to resist, but Gomez continued to resist arrest. A reasonable officer would believe that Gomez was resisting and endangering officer safety. Jackson, 944 F.3d at 711. Under Eighth Circuit precedent, the officers did not violate Gomez's Fourth Amendment rights by deploying their tasers. See, e.g., McManemy v. Tierney, 970 F.3d 1034, 1038 (8th Cir. 2020) ("Under [Eighth Circuit] precedent, it is reasonable for an officer to tase an uncuffed suspect who appears to be resisting arrest); Jackson, 944 F.3d at 711–13 (holding that tasing a noncompliant, aggressive suspect who is resisting arrest is not unreasonable); Brossart v. Janke, 859 F.3d 616, 625 (8th Cir. 2017) (finding the use of a taser on a suspect who physically resists being handcuffed when told he is under arrest is not unreasonable);

Ehlers, 846 F.3d at 1011 (holding that because officers could have interpreted Ehlers's behavior after the spin take down of continuing to lay on hand hands and refusing to comply with instructions as resistance, Dirkes did not violate a constitutional right by using a taser); Carpenter v. Gage, 686 F.3d 644, 649–50 (8th Cir. 2012) (holding that it is not unreasonable for an officer to use a taser on a suspect lying on the ground who refuses orders to present his hands for handcuffing). After Gomez was subdued, handcuffed, and no longer posed any threat to the officers' safety, there is no evidence that the Defendant officers used any further force. Rather, the body camera videos show that the officers had Gomez sit on the steps of the porch until other officers arrived to take Gomez from the scene.

Citing Brown v. City of Golden Valley, 574 F.3d 491 (8th Cir. 2009), Gomez contends that it was clearly established that using a taser on a nonresistant, non-threatening misdemeanant would violate the Fourth Amendment. Doc. 58 at 1. In Brown, the Eighth Circuit recognized that "the law was sufficiently clear to inform a reasonable officer that it was unlawful to Taser a nonviolent, suspected misdemeanant who was not fleeing or resisting arrest, who posed little to no threat to anyone's safety, and whose only noncompliance with the officer's commands was to disobey two orders to end her phone call to a 911 operator." 574 F.3d at 499.

The circumstances of the arrest in Brown are far different from the circumstances the Defendant officers faced here. In Brown, the Eighth Circuit noted that the situation was not tense, uncertain, or rapidly evolving. Id. at 497. Brown was sitting in the passenger seat, still restrained by her seatbelt, and had not done anything to indicate that she was resisting arrest or attempting to flee. Id. The officer instructed Brown twice to get off her cell phone, but Brown responded that she was afraid and wanted to remain on the line with the 911 operator. Id. at 494. Without saying anything else, the officer tased Brown. Id. In fact, the officer did not advise Brown that she was

under arrest before he tased her.  In contrast, Officer Reiter repeatedly told Gomez that he was under arrest and instructed him to stand up and place both hands behind his back.  Gomez refused to comply with these directives and accused the officers of trespassing.[6]   When the Defendant officers entered the porch to place Gomez in handcuffs, Gomez responded violently and punched the officers repeatedly before they deployed their tasers.

Gomez's actions are not comparable to the "seat-belt-restrained passenger cowering in her automobile as was the case in Brown v. City of Golden Valley[.]"  Rudley v. Little Rock Police Dep't, 935 F.3d 651, 654 (8th Cir. 2019).  When Defendants used their tasers, Gomez was violently resisting arrest, had punched both officers several times, and was endangering officer safety. Gomez was not non-resistant nor non-threatening when the Defendant officers deployed their tasers.  When officers are confronted with aggressive, noncompliant behavior and a chaotic, tumultuous situation, such as Officers Reiter and Bobier faced, the use of a taser is reasonable. Id.; see also Franklin v. Franklin Cnty. 956 F.3d 1060, 1062 (8th Cir. 2020) (holding that officer who tased a violent, defiant arrestee at least five times did not violate arrestee's right to be free from excessive force); Zubrod v. Hoch, 907 F.3d 568, 572, 579–80 (8th Cir. 2018) (holding that officers who tased a violent, resisting arrestee up to ten times did not violate the Fourth Amendment); Cooke v. City of Bella Villa, 582 F.3d 840, 851 (8th Cir. 2009) (holding that officer's use of taser against suspect who stepped out of his vehicle and took one step toward the officer was reasonable during a "rapidly escalating situation," although it was given without warning or after commands).

_____

[6] Gomez's subjective motivation for resisting arrest is immaterial since the reasonableness of the force is determined based on the perspective of a reasonable officer at the scene.  Carpenter, 686 F.3d at 650.  A reasonable officer at the scene would not believe he was trespassing.

In his complaint, Gomez alleges that the officers "repeatedly punched and [struck] Gomez wile pushing and pulling Gomez back and forth like a puppet to create illusion of Gomez resisting arrest." Doc. 1 at 4. In the amended complaint, Gomez asserts that he "make no threats verbal or otherwise to place officers in reasonable fear . . . [and that there was] no risk of injury towards officers to justify officers [sic] use of excessive lethal force." Doc. 27 at 4. Gomez's version of the facts, as alleged in his complaint and amended complaint, contradicts the video and audio evidence that has been presented to this Court.[7] In assessing summary judgment on an excessive force claim, the Supreme Court has instructed that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007). The videos Defendants submitted contradict Gomez's version of the facts. See Doc. 52, Ex. B; Doc. 53, Ex. B; Doc. 54, Ex. B; Doc. 55, Ex. B. Contrary to Gomez's allegation that he was tased while he was passive and nonthreatening, the video evidence clearly shows otherwise. Because no reasonable jury could credit Gomez's version of the events, this Court finds, as a matter of law, that Officers Reiter and Bobier did not use objectively unreasonable force to arrest Gomez when Gomez refused to comply with their commands and became combative, violent, and aggressive when they attempted to arrest him.

Gomez seeks injunctive relief against Officers Reiter and Bobier in their individual capacities. See Doc. 27 at 7. Officers Reiter and Bobier, in their individual capacities, are entitled

---

[7] The video and audio clearly captures what occurred before and after Gomez fought with the Defendant officers. Officer Reiter's and Bobier's body camera videos continue during the physical altercation, but appear to be knocked off of them. Recruit Officer Mitchell's body camera shows a bit of the altercation, though the darkness of the evening and the position of the bodies obscures and affects the footage.

to summary judgment on Gomez's claim for injunctive relief for two reasons. First, injunctive relief is not available against these Defendants in their individual capacities. See Greenawalt v. Ind. Dep't of Corrs., 397 F.3d 587, 589 (7th Cir. 2005) ("[S]ection 1983 does not permit injunctive relief against state officials sued in their individual as distinct from their official capacity."). Second, injunctive relief is not available unless the plaintiff has established a constitutional violation. Gonzales-Perez v. Harper, 241 F.3d 633, 638 (8th Cir. 2001) ("Without any constitutional violation, there is no basis to award . . . injunctive relief[.]"). Officers Reiter and Bobier are entitled to summary judgment on Gomez's individual capacity claims.

### C. Official Capacity Claims

Gomez has sued Defendants Reiter and Bobier in their official capacities as well. Doc. 27 at 2. Claims against these Defendants in their official capacities are the equivalent of a lawsuit against the City of Sioux Falls. See Veatch v. Bartels Lutheran Home, 627 F.3d 1254, 1257 (8th Cir. 2020). A municipal government may only be sued "when execution of a government's policy or custom whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," deprives a plaintiff of a federal right. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). A municipality cannot be liable under § 1983 if the plaintiff does not establish an underlying constitutional or statutory violation. Johnson v. City of Ferguson, 926 F.3d 504, 506 (8th Cir. 2019) (quoting McCoy v. City of Monticello, 411 F.3d 920, 922 (8th Cir. 2005)) ("This circuit has consistently recognized a general rule that, in order for municipal liability to attach, individual liability first be found on an underlying substantive claim."). Because there is

no individual liability on Gomez's underlying excessive force claim, Gomez's official capacity claims fail.  Defendants are entitled to summary judgment on Gomez's official capacity claims.[8]

**III.      Gomez's Miscellaneous Motions**

### A. Motion for Reciprocal Order of Protection

Gomez filed a motion for a reciprocal order of protection.  Doc. 80.  When this Court granted the Defendants' request for a protective order, the protective order was limited to specific law enforcement materials related to Gomez's arrest that Defendants provided to Gomez.  The Court's protective order did not, as Gomez asserts, include all "filings in this case[.]"  See Doc. 80.  Federal Rule of Civil Procedure 26(c) provides that "[a] party . . . from whom discovery is sought may move for a protective order."  Gomez's motion for reciprocal order of protection is not based on any discovery request from Defendants.  There is no evidence in the record that Defendants have sought any discovery from Gomez.  Further under Rule 26(c), a court may grant a protective order only upon a showing of good cause by the moving party.  Pochat v. State Farm Mut. Auto. Ins. Co., 5:08-CV-05015-JLV, 2008 WL 5192427, at *3 (D.S.D. Dec. 11, 2008).  Gomez has not established good cause for a protective order covering all filings in this case.  For these reasons, Gomez's motion for a reciprocal order of protection, Doc. 80, is denied.

---

[8]Gomez has filed a motion seeking an extension of time to serve a summons on the City of Sioux Falls.  Doc. 74.  Because Gomez has failed to establish that Officers Reiter and Bobier violated his Fourth Amendment rights, Gomez's motion for extension of time is denied as moot.

**B. Motion to Appoint Counsel**

On January 20, 2023, after Defendants' motion for summary judgment was fully briefed,[9] Gomez filed a motion for appointment of counsel. Doc. 81. Gomez has filed three previous motions for appointment of counsel. Docs. 14, 57, 60. He also asked for counsel to be appointed in his amended complaint. Doc. 27 at 7. As this Court stated when denying Gomez's previous motions, this Court believes that Gomez is capable of pursuing his claims pro se at this phase of the litigation. Doc. 19 at 13, 15; Doc. 67 at 8, 9.

In his most recent motion, Gomez contends he is "being obstructed form receiving any relevant documents, answers to interrogatories, and from any meaningful discovery." Doc. 81 at 1. He also asserts that "the jail is not providing any meaningful access to legal assistance" because the jail "has not provided typewriters or a document creating app" and the jail "has not trained a librarian nor inmate clerks." Id. Neither of these are a reason to appoint counsel at this stage of the proceedings.

Defendants have provided to Gomez copies of the police reports related to his October 1, 2021 arrest, photographs taken in connection with his arrest, body camera and surveillance footage of his arrest, and a recording of the 911 call to dispatch on the date of his arrest. Doc. 36 at 2; Doc. 78. This Court has stayed discovery until it rules on Defendants' motion for summary judgment and enters a scheduling order. See Doc. 67 at 6. Gomez's assertion that he is being obstructed from receiving meaningful discovery because he is not represented by counsel is without merit.

Although Gomez asserts that the Minnehaha County Jail does not provide access to word processing equipment, a law librarian, or "inmate clerks," this Court has previously determined

---

[9] When Gomez responded to Defendants' request that this Court disregard his untimely filings opposing Defendants' motion for summary, he stated that he "does not plan to file any additional documents or briefs." Doc. 79 at 1.

that Gomez has the ability to investigate and present his claims adequately at this stage of the proceedings. Gomez provides no legitimate reason for this Court to reconsider or revisit its previous ruling. Swackhamer v. Scott, No. 07-2658, 2008 WL 1969670, at *1 (8th Cir. May 8, 2008) (per curiam) (stating that a court is entitled to rely on its previous rulings the appointment of counsel when there is an "absence of any reason to revisit or modify it."). Gomez's motion for appointment of counsel, Doc. 81, is denied.

### C. Motion for Leave to Submit Exhibits/Attachments

Gomez had filed a motion for leave to submit exhibits and attachments. Doc. 85. The exhibits and attachments Gomez seeks to submit relate to Gomez's claims that his right to a speedy trial has been violated in a state-court criminal proceeding. Doc. 85-1. Gomez's state-court speedy trial rights are not relevant to his claims in this case. Gomez's motion for leave to submit exhibits and attachments, Doc. 85, is denied.

### D. Motion for Court Order/Subpoena

After Defendants' motion for summary judgment was fully briefed, Gomez filed a motion seeking a court order requiring the City of Sioux Falls to produce Defendants' discipline records and performance reviews. Doc. 101. Gomez's motion, Doc. 101, is denied as moot.

### E. Motion to Disqualify

Gomez filed a motion to disqualify the undersigned judge pursuant to 28 U.S.C. § 455(d)(2). Doc. 105. Gomez asserts that because Kirsten Lange at Woods Fuller law firm was provided electronic notice of this Court's opinion and order granting Defendant's Motion to Enforce Protective Order, the undersigned judge is related to one of the attorneys for the Defendants, Kirsten Lange.

In relevant part, 28 U.S.C. § 455(b)(5)(ii) provides that a judge shall disqualify himself if "[h]e or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person . . . is acting as a lawyer in the proceeding." Kirsten Lange is not acting as an attorney for Defendants in this proceeding.[10]   James Moore and Justin Bergeson are Defendants' attorneys of record. Electronic notice of this Court's Opinion and Order Granting Defendants' Motion to Enforce Protective Order was provided to Attorney Moore and Ms. Lange because Attorney Moore has designated Ms. Lange as a secondary email address on his CM/ECF account for email notice purposes. Similarly, because Attorney Bergeson has designated Stacey Leasure as a secondary email recipient on his CM/ECF account for email notice purposes, Ms. Leasure was also provided electronic notice of this Court's Opinion and Order Granting Defendants' Motion to Enforce Protective Order.

Gomez admits that his motion is based on an assumption that the undersigned judge is related to Ms. Lange because they share the same last name: "It is not unreasonable to believe [Chief Judge] Roberto Lange and Kirsten Lange are family and question his bias or impartiality, favoring the defendants." Doc. 105 at 2. Gomez's assumption is not correct. The undersigned judge is not related to Kirsten Lange, does not know Kirsten Lange, and does not have any close relatives who live or work in or around Sioux Falls at this time. For these reasons, Gomez's Motion to Disqualify, Doc. 105, is denied.

For the reasons stated above, it is hereby ORDERED:

1. That Defendants' Motion for Summary Judgment, Doc. 49, is granted and Gomez's Motion in Opposition to Defendants' Motion for Summary Judgment, Doc. 62, is

---

[10] Ms. Lange is not identified as an attorney on the website of Defendants' counsels' law firm. See https://woodsfuller.com/our-attorneys (last accessed on 4/13/23).

denied.  The claims against Officer Justin Reiter, in his individual and official capacity, and the claims against Officer Aaron Bobier, in his individual and official capacity, are dismissed with prejudice.

2.  Gomez's Motion for Extension of Time, Doc. 70, Motion to Supplement Response, Doc. 75, and Motion for Good Cause Delay to File Documents, Doc. 84, are denied.

3.  Gomez's Motion to Extend the Time to Serve a Summons on this City of Sioux Falls, Doc. 74, is denied as moot.

4.  Gomez's Motion for a Reciprocal Order of Protection, Doc. 80, is denied.

5.  Gomez's Motion to Appoint Counsel, Doc. 81, is denied.

6.  Gomez's Moton for Leave to Submit Exhibits/Attachments, Doc. 85, is denied.

7.  Gomez's Motion to Uphold and Enforce the United States Constitution, Doc. 95, is denied as moot.

8.  Gomez's Motion to Electronically File Documents, Doc. 96, is denied as moot.

9.  Gomez's Motion for Court Order/Subpoena, Doc. 101, is denied as moot.

10.  Gomez's Motion to Disqualify, Doc. 105, is denied.

DATED this 28ᵗʰ day of April, 2023.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE

23